## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO: 1:15-CV-22009-UU/AOR

BAPTIST HOSPITAL OF MIAMI, INC.;
SOUTH MIAMI HOSPITAL, INC.;
DOCTORS HOSPITAL, INC.;
HOMESTEAD HOSPITAL, INC.;
MARINERS HOSPITAL, INC.; WEST
KENDALL BAPTIST HOSPITAL,
INC.; BAPTIST HEALTH ENTERPRISES,
INC.; BHS AMBULATORY SURGICAL
CENTER AT BAPTIST, LTD.; BAPTIST
OUTPATIENT SERVICES, INC.;
MEDICAL ARTS SURGERY CENTER AT
SOUTH MIAMI, LTD.; and BAPTIST
SURGERY AND ENDOSCOPY
CENTERS, LLC.,

      Plaintiffs,

v.

HUMANA HEALTH INSURANCE
COMPANY OF FLORIDA, INC.;
HUMANA MEDICAL PLAN, INC.;
and HUMANA INSURANCE
COMPANY,

      Defendants.

_____/

## AMENDED COMPLAINT

Plaintiffs, Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., Doctors Hospital,

Inc., Homestead Hospital, Inc., Mariners Hospital, Inc., West Kendall Baptist Hospital, Inc.,

Baptist Health Enterprises, BHS Ambulatory Surgical Center at Baptist, Ltd., Baptist Outpatient

Services, Inc., Medical Arts Surgery Center at South Miami, Ltd., and Baptist Surgery and

Endoscopy Centers, LLC (collectively "Baptist") sue Humana Health Insurance Company of

Florida, Inc., Humana Medical Plan, Inc., and Humana Insurance Company (collectively "Humana") and allege:

**Nature of Action**

1.      By this action, Baptist seeks to recover the proper rate of payment owed by Humana as reimbursement for goods and services provided by Baptist.

2.      Baptist seeks to recover damages arising out of Humana's breach of a Hospital Participation Agreement dated November 1, 2001 which includes subsequent amendments, joinders and addenda ("HPA").  *The HPA, in redacted form, is attached as Composite Exhibit "A."* [1]  Humana and Baptist had a contractual relationship up until August 14, 2014, when Humana terminated the HPA.   Prior to the termination, Humana materially breached the agreement by paying for goods and services furnished by Baptist to Humana members using improper reimbursement rates.   Humana also breached the contract by excluding Baptist from participating in certain health insurance network plans operated by Humana, in which Baptist had a contractual right to participate.

3.      Following the termination, Humana members continue to present to Baptist for emergency and related services.   Baptist continues to suffer damages as a result of Humana paying improper amounts for goods and services furnished by Baptist to Humana's members.   Baptist seeks damages for these post-contract goods and services under Florida Statutes, common law and equitable principles.

**Parties & Jurisdiction**

4.      The Baptist plaintiffs are non-profit healthcare providers organized under the laws of Florida with their principal places of business in Miami-Dade County.

---

[1] Baptist has requested leave to file the HPA in unredacted form under seal.

5.      Defendant, Humana Health Insurance Company of Florida, Inc., is a for-profit health insurance company organized under the laws of Florida, with its principal place of business in Miramar, Florida.

6.      Defendant, Humana Medical Plan, Inc. is a for-profit health maintenance organization created under the laws of Florida, with its principal place of business in Miramar, Florida.

7.      Defendant, Humana Insurance Company, is a for-profit Wisconsin corporation with its principal place of business in Louisville, Kentucky. Humana Insurance Company is subject to jurisdiction in Florida because it is a licensed insurance company under the laws of Florida and frequently and regularly transacts business in the state of Florida.

8.      Baptist also provided goods and services to specified Humana affiliates. Baptist's provision of such healthcare services are governed by the HPA, and Humana is obligated to reimburse Baptist for same. The Humana affiliates encompassed by the HPA include:

> Humana Health Insurance of Nevada, Inc.
> Humana Health Plan, Inc.
> Humana HealthChicago, Inc.
> Humana HealthChicago Insurance Company
> Humana Health Plan of Lousiana, Inc.
> Humana Health Plan of Ohio, Inc.
> Humana Health Plan of Texas, Inc.
> Humana Health Plan of Utah, Inc.
> Humana Health Plan of Washington, Inc.
> Humana Kansas City, Inc.
> Humana Wisconsin Health Organization Insurance Corporation
> Humana Employers Health Plan of Georgia Inc.
> EMPHESYS Wisconsin Insurance Company
> HMO California
> Emphesys Insurance Company

9.      Humana and its affiliates are engaged in the business of offering health insurance to employers and individuals, and offers plans including a health maintenance organization, point of service, exclusive provider organization, preferred provider organization and indemnity

3

products to the public.  Humana also contracts with healthcare providers, such as Baptist, to establish, among other things, pricing and payment terms for services provided to its members. Humana regularly conducts this business throughout Miami-Dade County.

10.     Venue is properly laid in that Humana conducts business in Miami-Dade County, and the acts complained of predominantly occurred in Miami-Dade County.

### Background

**A.     Creation of the Humana/Baptist Relationship.**

11.     In November 2001, Baptist and Humana entered into the HPA whereby Baptist agreed to participate as a network provider in the Humana health plans in exchange for certain reimbursement terms and other conditions.

12.     Over the years, the HPA was amended from time to time to include joinder agreements and addenda reflecting changes in reimbursement rates and to add Baptist facilities and additional health plans operated by Humana.

13.     In agreeing to participate in Humana plans, it was important for Baptist to be included as a network provider in all commercial plans offered by Humana.  A commercial insurance plan is commonly understood in the healthcare industry to be a health insurance plan that is not offered to those eligible for Medicare or Medicaid.  Participating in all of a health insurance company's commercial plans is desirable for Baptist from an administrative patient registration standpoint.  Distinguishing between an insurer's roster of participating plans and non-participating plans at the point of service is an unduly burdensome process and leads to undue complexity in processing claims.

14.     Participating in all commercial plans offered by a health insurer is also necessary for Baptist to maintain its physician relationships.  When physicians accept insurance that a

hospital does not accept, the physicians may send their patients to other hospitals that accept the same insurance plans that the physician accepts.

15.     Baptist provided significant consideration to Humana in return for being included in all of Humana's commercial plans and various non-commercial plans in the form of a substantial discount on reimbursement rates for the services Baptist provides Humana's members and subscribers.

16.     Significant factors in the discounts that Baptist provided Humana are the administrative certainty of participating in all commercial plans and the increased volume of patients that Baptist would be able to serve.

17.     In negotiating and doing business under the HPA, Baptist and Humana intended for Baptist to participate in the network of all Humana commercial health plans and many of Humana's other non-commercial plans.

**B.     Humana's Breaches of the HPA**

18.     Humana has breached the HPA in three material ways.

### i.     *Improper Underpayments*

19.     Humana underpaid and improperly reimbursed for goods and services furnished by Baptist to Humana's members.  Humana failed to pay the proper rate of reimbursement for Baptist's services as specified in the HPA.  As a result, Baptist received significantly less reimbursement for its services than it bargained for in the HPA, despite fulfilling all of its obligations under the Agreement.

### ii.     *Exclusions from Health Insurance Marketplace/Exchange Network*

20.     The Patient Protection and Affordable Care Act requires all states to create or implement health insurance exchanges also known as health insurance marketplaces.  A health insurance exchange is an organized marketplace where individuals and small groups are able to

shop for commercial health insurance plans.  An exchange does not constitute or create health insurance, but rather serves as a mechanism through which consumers can compare and purchase commercial plans offered by private health insurance companies, like Humana.   Humana has, since its implementation, offered plans on the health insurance marketplace for Florida ("Florida Exchange.")

21.     Humana also breached the HPA by improperly excluding Baptist from the network of providers established for the commercial plans Humana offers through the Florida Exchange.

22.     One of the goals of the Florida Exchange is to offer affordable healthcare to low-income and previously uninsured individuals.  A significant part of Baptist's mission is to provide quality healthcare to this patient demographic.

23.     Humana was required, under the HPA, to include Baptist's facilities in the provider network established for healthcare insurance offered to the public through the Florida Exchange.  Humana breached the HPA by failing to do so.

24.     Baptist has suffered damages as a result of Humana improperly excluding Baptist from Humana's network for the Florida Exchange because fewer patients presented to Baptist facilities for healthcare goods and services than otherwise would have had Humana complied with the contract and treated Baptist as an in-network provider.

25.     In addition to caring for fewer Florida Exchange members, Baptist has also been damaged by Humana failing to comply, during the contract period, with the HPA reimbursement provisions for those Florida Exchange members who have presented for treatment.

### iii.     Improper Sequestration Reduction

26.     On March 1, 2013, pursuant to the Budget Control Act of 2011, the executive branch of the United States government was obligated to reduce by 2% its payments for a wide

range of government programs including Medicare. This reduction has become known as "sequestration" or "the sequester." According to CMS, the sequestration began on April 1, 2013 and reduced payments the federal government would make for specified programs.

27.     CMS was obligated to reduce the payments it made to Medicare Advantage Organizations ("MAO") such as Humana by the 2% sequester, in effect, a premium reduction to the MAOs. Humana responded by reducing certain payments to Baptist, including for services with rates based on Medicare specific facility rates, by 2%. CMS has declared, however, that the sequester does not apply to payments made by MAOs, such as Humana, pursuant to contracts with its health care providers incorporating Medicare rates for reimbursement of services.

28.     Humana breached the HPA with Baptist by improperly reducing payments based on Medicare rates to Baptist by 2%.

29.     Baptist took numerous steps to resolve these issues with Humana. Baptist objected to and appealed underpayments, and sent periodic reports in the ordinary course of business indicating improper payment variances and requesting reimbursement from Humana. In addition, Baptist and Humana held pre-suit meetings to confer regarding disputed issues, including reimbursement matters and Baptist's participation in Humana's Florida Exchange network.

**C.     Humana's Improper Post-Contract Conduct.**

30.     Humana terminated the contract effective August 14, 2014. Following termination of the contract, Humana members continue to present to Baptist facilities seeking care for emergency conditions. When such a patient presents, Baptist is required by federal and state law to provide treatment.

31.     Humana members also seek and obtain non-emergency services from Baptist, either due to stabilization of an emergency condition or for an elective admission.

7

32.   In cases of an elective admission, Humana entered into single case agreements agreeing to pay Baptist specified rates for specified services.  In other cases, Humana authorized Baptist to provide services to the Humana member or subscriber.

33.   Following termination of the HPA, Baptist stopped receiving the benefit of the HPA, namely patient volume, claims administration certainty, and physician synergy. Consequently, Humana is no longer entitled to receive the discounts that Baptist previously provided it in the HPA.

34.   For the post-contract period services, Humana is required to pay (i) Baptist's billed charges; (ii) the usual and customary charges, or (iii) the reasonable value of the services, depending on the circumstances.

35.   Baptist has, during the contract period and the post-contract period, contested Humana's improper reimbursement rates, and sought review of same.

36.   Baptist has retained the undersigned counsel and agreed to pay said counsel a reasonable attorneys' fee.

### COUNT I
### Breach of Contract
### (All Defendants)

37.   Baptist realleges and adopts the allegations set forth in paragraphs 11 through 36 above.

38.   From November 2001 through August 1, 2014, Baptist and Humana had a valid and enforceable contract.

39.   As described more fully above, Humana materially breached the HPA in numerous ways.

40.   As a result, Baptist has been damaged in an amount in excess of $15,000.

8

41.     All of the conditions and covenants specified in the contract are inapplicable, or have been performed, waived, or otherwise satisfied by Baptist.

**WHEREFORE,** Baptist requests that this Court enter judgment against Defendants, award compensatory damages in excess of $15,000, pre and post-judgment interest as required by Florida law, attorney's fees pursuant to Florida Statutes § 641.28 and § 627.428, and such other relief as the Court deems just and equitable.

## COUNT II
### Violation of Fla. Stat. 641.513 - Baptist Hospitals[2]
### (Humana Medical Plan, Inc.)

42.     Baptist Hospitals reallege and adopt the allegations set forth in paragraphs 11 through 35 above.

43.     Following termination of the HPA, Baptist Hospitals have provided and continue to provide emergency services and care to Defendant Humana Medical Plan, Inc.'s members as non-contracted providers.

44.     This Defendant is obligated to reimburse Baptist Hospitals for emergency services and care provided to such members.

45.     Defendant must reimburse Baptist Hospitals for emergency services and care using rates specified by Florida Statutes § 641.513.

46.     Despite notice and demand, Defendant has failed to reimburse Baptist Hospitals in accordance with Florida Statutes § 641.513.

47.     As a result, Baptist Hospitals have been damaged in an amount in excess of $15,000.

---

[2]  The Baptist Hospital plaintiffs who are bringing Count II consist of Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., Doctors Hospital, Inc., Homestead Hospital, Inc., Mariners Hospital, Inc., West Kendall Baptist Hospital, Inc. (collectively "Baptist Hospitals").

**WHEREFORE,** Baptist Hospitals request that this Court enter judgment against Defendant Humana Medical Plan, Inc.'s, award compensatory damages in excess of $15,000, pre and post-judgment interest as required by Florida law, and such other relief as the Court deems just and equitable.

## COUNT III
### Breach of Implied-In-Fact Contract
### (All Defendants)

48.     Baptist realleges and adopts the allegations set forth in paragraphs 11 through 35 above.

49.     In addition to emergency services and care, following termination of the HPA, Baptist also provides non-emergent care to Defendants' members.

50.     In certain cases, such members present for emergency care and may be admitted to the hospital for reasons of medical necessity.

51.     In cases where an admitted patient's emergency conditions are stabilized, Baptist provides continued care consisting of non-emergency care and services.  In such cases, Baptist seeks to obtain authorization from Defendants.

52.     Defendants have control over whether their plan members receive non-emergent services from Baptist in that, rather than authorizing such services, Defendants are free to transfer or direct its members to a different, participating hospital or other facility.

53.     Defendants are obligated to reimburse Baptist for non-emergency care provided to Defendants' members.  Florida Statutes § 641.513 does not govern such rates for non-emergency care and services.

54.     On or about December 17, 2014, Baptist made a continuing offer to Defendants, whereby it offered to provide authorized non-emergency services to Defendants' members

10

subject to reimbursement equal to Baptist's billed charges.  Specimens of the continuing offers which have been made by Baptist on a continuous basis, are attached as Exhibit "B."

55.     Since at least January 8, 2015, Defendants had knowledge of Baptist's continuing offers and that the compensation to be paid for the offered services was an express, material term of the offer.

56.     Subsequent to receiving Baptist's continuing offers, Defendants authorized non-emergency care for Defendants' plan members.

57.     Defendants' conduct, by authorizing Baptist to provide such care, constitutes acceptance of the continuing offers.

58.     Defendants are obligated to pay Baptist for non-emergency care described above based on Baptist's billed charges.

59.     Defendants have failed to pay Baptist for non-emergency care provided after receipt of Baptist's continuing offer based on billed charges, and instead have paid a lesser amount, and have therefore breached their implied-in-fact contracts.

60.     As a result, Baptist has been damaged and is owed an amount in excess of $15,000.

**WHEREFORE,** Baptist requests that this Court enter judgment against Defendants, award compensatory damages in excess of $15,000.00, pre and post-judgment interest as required by Florida law, and such other relief as the Court deems just and equitable.

**COUNT IV**
**Breach of Implied-In-Law Contract**
**(All Defendants)**

61.     Baptist realleges and adopts the allegations set forth in paragraphs 11 through 35 above.

62.     Defendants have an obligation to arrange for the provision of medically necessary covered services to its members and compensate providers who render such services.

63.     Following termination of the HPA, Baptist provided and continues to provide emergency and non-emergency services and care to Defendants' members and thus conferred benefits on Defendants by helping Defendants fulfill their obligations.

64.     While no authorization is required prior to providing emergency services, such services are required to be included as "covered services" in all health plans offered by Humana, and Humana is obligated to reimburse providers, such as Baptist, of emergency services.

65.     Defendants authorized the provision of non-emergency services and care, thus had knowledge of the benefits, and voluntarily accepted or retained the benefits.

66.     Defendants' authorization of the non-emergency services provided by Baptist resulted in "covered services," for which Defendants are obligated to pay the reasonable value.

67.     The circumstances are such that it would be inequitable for Defendants to retain the benefit of Baptist's services without paying fair value.

68.     In the event a health plan and a provider do not reach an express agreement as to reimbursement rates for particular services, it is industry practice that the provider is reimbursed at usual and customary rates.

69.     In the event it is determined there is no agreement as to price, Baptist is entitled to recover the reasonable value of its services for non-emergency services and care.

70.     The reasonable value of the services provided by Baptist is reflected in its billed charges, or usual and customary charges, which Defendants have only partially paid.

71.     As a result, Baptist has been damaged and is owed an amount in excess of $15,000.

**WHEREFORE**, Baptist requests that this Court enter judgment against Defendants, award compensatory damages in excess of $15,000, pre and post-judgment interest as required by Florida law, and such other relief as the Court deems just and equitable.

**Count V**
**Breach of Express Contract – Letters of Agreement**
**(All Defendants)**

72.     Baptist realleges and adopts the allegations set forth in paragraphs 11 through 36 above.

73.     Baptist entered into express Letters of Agreement with Defendants to provide certain medical services and care to certain of Defendants' members.  (Due to the confidential and proprietary nature of the Letters of Agreement and HIPAA protections, a redacted version of the agreements are attached as Exhibit "C."[3]

74.     Baptist rendered the medical services and care they were obligated to provide pursuant to the Letters of Agreement.

75.     Defendants failed to pay Baptist for the medical services and care provided  at the reimbursement rates set forth in the Letters of Agreement.

76.     All conditions specified in the Letters of Agreement have been performed, waived, or satisfied by Baptist.

77.     As a result, Baptist has suffered damages in excess of $15,000.

**WHEREFORE**, Baptist requests that this Court enter judgment against Defendants, award compensatory damages in excess of $15,000, pre and post-judgment interest as required by Florida law, attorney's fees pursuant to Florida Statutes § 641.28 and § 627.428, and such other relief as the Court deems just and equitable.

---

[3] Upon information and belief, other relevant Letters of Agreement will be obtained during discovery. In addition, there may be Letters of Agreement currently undergoing appeal, which may eventually be underpaid by Humana and at issue in this case.

## COUNT VI
## Promissory Estoppel
## (All Defendants)

78.     Baptist realleges and adopts the allegations set forth in paragraphs 11 through 35 above.

79.     Following Humana's termination of the HPA, Baptist served as an out-of-network provider and furnished goods and services to Humana's members.

80.     Prior to providing such services to Humana's members, Baptist sought and obtained a representation that the prospective services were "covered services" and subject to Humana's obligations to pay for such services.

81.     Humana authorized and represented to Baptist that such services were "covered services," and that the Humana members in question were eligible for coverage by Humana.

82.     Humana's authorizations included a promise to pay Baptist's usual and customary charges, as dictated by industry practice.

83.     Due to Baptist's status as an out-of-network provider, Humana knew it was not entitled to discounts under the HPA.

84.     Humana knew or should have known that, in accordance with industry standards, it was required to reimburse Baptist's usual and customary charges for out-of-network services.

85.     Baptist relied on Humana's representations in providing out-of-network healthcare services to Humana's members.

86.     Humana knew, or should reasonably have expected, that Baptist would rely on Humana's promises, and, such promises induced Baptist to provide goods and services to Humana's members.

87.   Despite its promises, Humana has only partially paid for Baptist's services. Humana should be required to pay usual and customary charges or the reasonable value of Baptist's goods and services provided to Humana's members.

88.   Injustice can only be avoided by requiring Humana to honor its promises and reimburse Baptist a reasonable amount for its services.

**WHEREFORE**, Baptist requests that this Court enter judgment against Defendants, award compensatory damages in excess of $15,000, pre and post-judgment interest as required by Florida law,  and such other relief as the Court deems just and equitable.

### <u>JURY TRIAL</u>

Baptist demands trial by jury on all issues so triable.

Dated this 6th day of July, 2015.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, LLP
Counsel for Plaintiffs
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: /s/Kenneth R. Hartmann
Kenneth R. Hartmann
Florida Bar No. 664286
Email: krh@kttlaw.com
Latasha G. Hines
Florida Bar No. 115886
Email: lgh@kttlaw.com
Monica McNulty
Florida Bar No. 15382
Email: mcnulty.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true copy of the foregoing has been filed with the Clerk of Court, using CM/ECF, this 6th day of July, 2015.  I also certify that the foregoing document is being served the same date, via electronic mail to: Pierre H. Bergeron, Esq. (pierre.bergeron@squirepb.com) and Kimberly Donovan, Esq. (Kimberly.donovan@squirepb.com), Squire Patton Boggs (US) LLP, 200 S. Biscayne Blvd., Suite 4700, Miami, FL 33131.

By: /s/Kenneth R. Hartmann
Kenneth R. Hartmann

3201/111/362968.1

16